IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THOMAS E. PEREZ, | ) | |
| Secretary of the United States | ) | |
| Department of Labor, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 14-00426-N |
| | ) | |
| GULF COAST MANAGEMENT | ) | |
| COMPANY, LLC, d/b/a HAMPTON | ) | |
| INN SARALAND, and | ) | |
| ANAND PATEL, individually, | ) | |
|     Defendants. | ) | |

## ORDER

This action is before the Court on the Motion for Default Judgment (Doc. 14) filed by Plaintiff Thomas E. Perez, Secretary of the United States Department of Labor (hereinafter, "the Secretary"). Upon consideration, and for the reasons stated herein, the Court finds that the motion is due to be **GRANTED**, as set out.[1]

---

[1] This case has been randomly assigned to the undersigned United States Magistrate Judge for all purposes, including trial (*see* Doc. 4) in accordance with the Court's Standing Order No. 24 (www.alsd.uscourts.gov/documents/forms/STDO24.pdf). Inasmuch as no party, to date, has returned to the Clerk of Court a Request for Reassignment to a United States District Judge (*see* Doc. 4 at 1 ("The parties have the right to have this action reassigned to a United States District Judge for trial and disposition. Any party may request reassignment by emailing the attached Request for Reassignment to a United States District Judge to sandra_rey@alsd.uscourts.gov. **Do not electronically file the document.**")), there presently exists implicit consent to the undersigned conducting all proceedings in this case. *See Roell v. Withrow*, 538 U.S. 580, 123 S. Ct. 1696, 1703, 155 L. Ed. 2d 775 (2003) ("We think the better rule is to accept implied consent where, as here, the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge. Inferring consent in these circumstances thus checks the risk of gamesmanship by depriving parties of the luxury of waiting for the outcome before denying the magistrate judge's authority. Judicial efficiency is served; the Article III right is substantially honored.").

# I.     Procedural History

The Secretary commenced this action on September 12, 2014, by filing a Complaint (Doc. 1) against the Defendants alleging violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("the FLSA").   On October 23, 2014, Defendant Anand Patel ("Patel") executed a waiver of service in this District that was sent on September 24, 2014 (*see* Doc. 6; Doc. 8 at 2, ¶ 4); thus, his responsive pleading was due November 24, 2014.  *See* Fed. R. Civ. P. 4(d)(3), 12(a)(1)(A)(ii), &  6(a)(1)(C).   A process server served Defendant Gulf Coast Management Company, LLC ("GCMC"), through its registered agent Ramon Patel, on November 8, 2014 (*see* Doc. 7; Doc. 8 at 2, ¶ 5); thus, its responsive pleading was due December 1, 2014.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i) & 6(a)(1)(C).  To date, neither Defendant has appeared, filed a responsive pleading, or otherwise defended in this action.

On January 12, 2015, upon application by the Secretary (*see* Doc. 11), the Clerk of Court entered default against both Defendants under Federal Rule of Civil Procedure 55(a).  (*See* Doc. 12).  On February 5, 2015, the Secretary filed the present Motion for Default Judgment (Doc. 14) under Federal Rule of Civil Procedure 55(b)(2) against both Defendants, requesting that the Court "enter judgment as prayed for in the Complaint."[2]

---

[2]      The Court questions whether the Defendants have been served with notice of the Entry of Default and (at least for GCMC) the Motion for Default Judgment.  Neither was served on GCMC at the address of its registered agent.  (*Compare* Docs. 13 and 14 at 3 (indicating that the entry of default and motion were both served on GCMC at 1320 Industrial Parkway, Saraland, Alabama) *with* Doc. 7 (indicating that process was served on GCMC's registered agent at 6401 Canebrake Road, Mobile, Alabama)).  The registered mail

## II.   <u>Analysis</u>

In this Circuit, "default judgments are disfavored. Courts prefer adjudication on the merits.  Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment." *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982) (internal citation omitted).  *See also In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003) ("[T]here is a strong

---

receipts for the notices of Entry of Default mailed to the Defendants were both signed by "Sherri Jacobi," who did not indicate that she was signing them as an agent of either Defendant. (*See* Doc. 13).

Nevertheless, Rule 55 does not specify that entry of default need be noticed on a party, and a " 'defendant who fails to answer within the time specified by the rules is in default even if that fact is not officially noted.' " *Perez v. Wells Fargo N.A.*, -- F.3d --, No. 13-13853, 2014 WL 7229271, at *6 (11th Cir. Dec. 18, 2014) (quoting 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2692 at 85 (3d ed. 2004)). Moreover, under the current version of Rule 55(b)(2), a party against whom default judgment is sought is only required to be served with written notice of the application if that party "has appeared personally or by representative…" *See also* Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear…"). Neither Defendant has appeared in this action.

"The appearance required by [Rule 55(b)(2)] has been broadly defined, and not limited to a formal court appearance." *Charlton L. Davis & Co., P. C. v. Fedder Data Ctr., Inc.*, 556 F.2d 308, 309 (5th Cir. 1977) (citing cases indicating that a "letter," "letters and phone calls," and a "claim and cost bond" could constitute "appearance") ("The plaintiff knew Financial had a clear purpose to defend the suit. The knowledge came from a phone call and a letter responsive to plaintiff's formal Court action." (quotation omitted)). *See also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent in this Circuit all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981); *S.E.C. v. Getanswers, Inc.*, 219 F.R.D. 698, 700 (S.D. Fla. 2004) (While Rule 55(b)(2)'s notice requirement "only applies when the defendant has 'appeared,' the defendant does not have to make a formal appearance to trigger the notice requirement. The defendant must simply manifest a clear intention to defend."). The Secretary has represented that, after he mailed notice of this action and a request for waiver of service to both Defendants, on October 22, 2014, Patel "telephone [counsel for the Secretary] and advised that he would sign the []waivers and overnight them to the [Secretary]." (Doc. 8 at 2, ¶ 3). This lone phone call does not manifest a clear intent to defend by Patel, and nothing else in the record supports a determination that either Defendant has "appeared" in this action (e.g. filings, attempts to contact the Court).

policy of determining cases on their merits and we therefore view defaults with disfavor.").

## A.      Subject Matter Jurisdiction

"It is . . . axiomatic that the inferior federal courts are courts of limited jurisdiction. They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).  Accordingly, "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.*

Under 28 U.S.C. § 1345, "[e]xcept as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."   "This suit was brought not by the United States but by the Secretary of Labor. Therefore, the issue is not whether the United States could initiate such a suit in the district court but whether the Secretary can…[F]or section 1345 jurisdiction to exist over this action, the Secretary must be expressly authorized to sue." *Marshall v. Gibson's Products, Inc. of Plano*, 584 F.2d 668, 676 (5th Cir. 1978).[3]

---

[3] In *Marshall*, the Secretary of Labor had brought suit "to enjoin the defendant…to submit to inspection under section 8(a) of the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. s 657(a) (1976)."  584 F.2d at 670.  "After submission of the case[ on appeal], the court directed both parties to file briefs stating the basis of federal court jurisdiction and

The Secretary has asserted claims that the Defendants have violated the minimum wage and overtime compensation requirements of 29 U.S.C. §§ 206 and 207, respectively, which also constitute violations of 29 U.S.C. § 215(a)(2) (making it "unlawful for any person to violate any of the provisions of section 206 or section 207 of this title…").   The Secretary has demanded damages under 29 U.S.C. § 216(c), which expressly provides that the "Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 [and] may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages."   *See Mitchell v. Robert De Mario Jewelry, Inc.*, 260 F.2d 929, 932 (5th Cir. 1958) ("In the drafting of the 1949 [Fair Labor Standards Amendments] there was included as Section 16(c) the provision that, with the exceptions stated, the Administrator, now the Secretary, could sue with the consent of the employees for unpaid minimum wages and unpaid overtime compensation. Thus was created a cause of action in the Secretary.  Suits by him under the statute are, in effect, suits by the United States."), *rev'd on other grounds*, *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288 (1960).

---

discussing the right of the Secretary to commence the action. Both parties insisted that the court had federal question jurisdiction and that the Secretary had ample authority under the Act to maintain the suit." *Id.* at 678 n.1 (Tuttle, J., dissenting).  Without addressing whether federal question jurisdiction applied, the panel majority found "that the district court lacked subject matter jurisdiction to entertain the Secretary's suit…" *Id.* Considering the reasoning of the majority in *Marshall*, the Court is left in doubt as to whether subject matter jurisdiction over the Secretary's present action, admittedly under a different statutory scheme, can be premised solely on federal question jurisdiction under 28 U.S.C. § 1331.

The Secretary has also requested injunctive relief under 29 U.S.C. § 217, which provides that the "district courts… shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the case of violations of section 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter…"  The Eleventh Circuit has held that "the Secretary of Labor has the exclusive right to bring an action for injunctive relief" under the FLSA.  *Powell v. State of Fla.*, 132 F.3d 677, 678 (11th Cir. 1998) (per curiam). Thus, because the FLSA has expressly authorized the Secretary to sue for the relief requested, this Court has subject matter jurisdiction under § 1345.

## B.   Personal Jurisdiction and Venue[4]

The Secretary's Complaint alleges that both Defendants conduct business in Mobile County, Alabama, and that all relevant actions occurred in this district. These uncontested allegations indicate that the Court can properly exercise personal jurisdiction over both Defendants and that venue is proper in this District.

## C.   Sufficiency of the Complaint

"An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."  Fed. R. Civ. P. 8(b)(6).  "While 'a default is not treated as an absolute confession by the

---

[4] *See Tyco Fire*, 218 F. App'x at 864 ("A defaulted defendant…can defend by challenging the jurisdiction of the court to enter judgment against him. Thus, for example, a defendant in default still can…contest the court's exercise of personal jurisdiction over him."); *United States v. Hall*, Civil Action No. 13-326-KD-N, 2013 WL 6844099, at *2 (S.D. Ala. Dec. 30, 2013) (*sua sponte* addressing whether venue and personal jurisdiction were sufficiently shown in granting uncontested motion for default judgment).

defendant of his liability and of the plaintiff's right to recover,' a defaulted defendant is deemed to 'admit[ ] the plaintiff's well-pleaded allegations of fact.'  The defendant, however, 'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'  Thus, before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought."  *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (per curiam) (unpublished) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975)) (footnote omitted).  *See also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim." (citing *Nishimatsu Constr.*, 515 F.2d at 1206 ("See Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir.1975) ("A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true.")).

The FLSA currently provides that, subject to certain inapplicable exceptions, "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages" in the amount of $7.25 an hour.  29 U.S.C. § 206(a)(1)(C).  The FLSA also provides that, subject to certain inapplicable exceptions, "no employer shall employ

any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.  29 U.S.C. § 207(a)(1).  It is "unlawful for any person…to violate any of the provisions of section 206 or section 207…"  29 U.S.C. § 215(a)(2).

By failing to answer the allegations in the Complaint, Patel has admitted that, at all relevant times, he "acted directly or indirectly in the interest of" GCMC "in relation to their employees," as he "makes final decisions on the operation of the enterprise, is responsible for maintaining compliance with the Hilton franchise agreement, and the general manager answers directly to him."  (*Id.* at 2).  Thus, Patel deemed an "employer" for purposes of the FLSA.  *See* 29 U.S.C. § 203(d) (" 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee…").

Moreover, by failing to answer the allegations in the Complaint, both Defendants have admitted that they "engaged in related activities performed either through unified operation or common control for a common business purposes" (Doc. 1 at 2), which constitutes an "enterprise" under the FLSA.  *See* 29 U.S.C. § 203(r)(1) (" 'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business

purpose…")).  They have also admitted that this "enterprise" "employed employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce; and…ha[s] an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated)" (Doc. 1 at 3), thus making it an "enterprise engaged in commerce or in the production of goods for commerce" for purposes of the FLSA. *See* 29 U.S.C. § 203(s)(1)(A).  As such, the Defendants have admitted that their employees were employed in an "enterprise engaged in commerce or in the production of goods for commerce" and were thus subject to the minimum wage and overtime requirements of §§ 206 and 207, respectively.

The Secretary's Complaint alleges that, "since May 7, 2011," the Defendants have "repeatedly and willfully" violated §§ 206, 207, and 215(a)(2) by failing to pay their employees the required minimum wage and overtime.[5]  "Specifically, the

---

[5]     "[T]he statute of limitations applicable to civil actions to enforce the Fair Labor Standards Act (FLSA)…provides that such actions must be commenced within two years 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.' " *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129 (1988) (quoting 29 U.S.C. § 255(a)).  Moreover, § 217 bars injunctions restraining withholding of back wages for "sums which employees are barred from recovering, at the time of the commencement of the action to restrain the violations, by virtue of the provisions of section 255…"

However, because the Defendants are in default, the Court need not determine whether any of the Secretary's claims may have been filed beyond the statute of limitations, as this is a procedural defense that the Defendants must assert. *See Tyco Fire*, 218 F. App'x at 864 ("Other than the narrow exceptions [of contesting jurisdiction and the sufficiency of the complaint and its allegations to support the judgment sought], a defendant, once a default has been entered against him, is not entitled to raise any other defenses. Accordingly, procedural defenses, such as a motion to dismiss for *forum non conveniens*…are lost."); *Hodgson v. Humphries*, 454 F.2d 1279, 1283-84 (10th Cir. 1972) (holding that 29 U.S.C. § 255 " was intended as a limitation on the remedy available, not on

Defendants did not provide compensation for all hours worked and the compensation they did pay did not equal at least the minimum wages for all hours worked[,]" and "the Defendants did not provide employees overtime compensation unless they recorded more than 80 hours in payroll in a bi-weekly pay period and payroll records did not record all hours worked by employees." (Doc. 1 at 3-4). By failing to contest these allegations, the Defendants have admitted to them, and the allegations sufficiently demonstrate that the Defendants are in violation of §§ 206, 207, and 215(a)(2).

The FLSA further provides that "[e]very employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time…" 29 U.S.C. § 211(c). Additionally, under 29 U.S.C. § 211(d), the Department of Labor's Administrator of the Wage and Hour Division[6] "is authorized to make such regulations and orders regulating, restricting, or prohibiting industrial homework as are necessary or appropriate to prevent the circumvention or evasion of and to safeguard the minimum wage rate prescribed in this chapter…" It is "unlawful for any person…to violate any of the provisions of section 211(c)…, or any regulation or order made or continued in effect

---

the right to bring the action, and must be pleaded as an affirmative defense"); *Mumbower v. Callicott*, 526 F.2d 1183, 1187 n.5 (8th Cir. 1975) (same); *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1370 (6th Cir. 1975) ("[W]e hold that s 255 establishes only a procedural limitation period under the Act. It is not like a statute which imposes a liability and provides the remedy which must be exercised in strict conformity to the statute.").

[6] *See* 29 U.S.C. § 204(a).

under the provisions of section 211(d)…, or to make any statement, report, or record filed or kept pursuant to the provisions of such section or of any regulation or order thereunder, knowing such statement, report, or record to be false in a material respect." 29  U.S.C. § 215(a)(5).

The Secretary's Complaint alleges that the Defendants violated §§ 211(c) and 215(a)(5), as well as relevant regulations found at 29 C.F.R. § 516, "by failing to make, keep and preserve adequate and accurate records of the persons employed and of the wages, hours and other conditions and practices of employment maintained by them as prescribed in the aforesaid Regulations."  (Doc. 1 at 4).  By failing to contest these allegations, the Defendants have admitted to them, and the allegations sufficiently demonstrate that the Defendants are in violation of §§ 211(c) and 215(a)(5).

### D.    Damages

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  "A court has an obligation to assure that there is a legitimate basis for any damage award it enters…" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).  The Secretary' Complaint seeks a damages award of "back wages for a period of three (3) years prior to the commencement of this action and an additional equal amount as liquidated damages to [the Defendants' ]employees" under 29 U.S.C. § 216(c).[7]  (Doc. 1 at 4-5).

---

[7] The Complaint claims that these "employees" are "named in Appendix 'A' attached hereto and made a part hereof…"  (Doc. 1 at 5).  No such appendix is attached to the Complaint

"The court may conduct hearings…when, to enter or effectuate [default ]judgment, it needs to determine the amount of damages."   Fed. R. Civ. P. 55(b)(2)(B).  The Eleventh Circuit has stated:

> An evidentiary hearing is not a *per se* requirement; indeed, Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone. *See* Fed. R. Civ. P. 55(b)(2) ("[T]he court *may* conduct such hearings …." (emphasis added)). We have held that no such hearing is required where all essential evidence is already of record. *See S.E.C. v. First Fin. Group of Tex., Inc.,* 659 F.2d 660, 669 (5th Cir. 1981) ("Rule 55(b)(2) does not require the district court to hold either an evidentiary hearing or oral argument on a motion for a default judgment.") (citing *Thomas v. United States,* 531 F.2d 746, 748 (5th Cir. 1976) ("Taxpayer's first contention that the district court should have held an evidentiary hearing and/or oral argument on the motion is without merit. All the essential facts were of record.")). Other circuits agree. *See, e.g., KPS & Assocs. v. Designs by FMC, Inc.,* 318 F.3d 1, 21 (1st Cir. 2003). Other circuits also agree, however, that such hearings are required in all but "limited circumstances," *id.,* as when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages. *Id.* (collecting cases).

*S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

The Complaint demands, pursuant to 29 U.S.C. § 216(c), to recover from the Defendants "minimum wage and overtime compensation, together with an equal amount as liquidated damages" (Doc. 1 at 1), but does not state a specific sum. However, in support of his motion for default judgment, the Secretary has submitted the affidavit of Monetta Roberts ("Roberts"), an investigator with the Department of Labor's Wage and Hour Division who investigated the FLSA violations at issue in this action  (Doc. 14-1)  She avers that her "investigation covered the period from April 10, 2011 through April 7, 2013" and "included

---

filed with the Court.

examining time, payroll and other employment records[,]" as well as speaking with Patel and interviewing "several of Defendants' employees…" (*Id.* at 1).  Based in her investigation, she determined that the Defendants "owe nine employees $2,848.37 in back wages." (*Id.* at 3).  Attached to Roberts's affidavit, which incorporates it by reference, is an appendix listing the names of the nine employees and the total back wages due to each of them.  (Doc. 14-2).

Roberts, however, does not provide any specific details regarding the data or methodology used to determine these amounts, instead simply asserting in conclusory fashion that they are the back wages the Defendants owe.  Generally, such conclusory assertions are insufficient in this District to support a claim for damages in a default judgment.  In *PNCEF, LLC v. Hendricks Building Supply LLC*, 740 F. Supp. 2d 1287 (S.D. Ala. 2010), Chief Judge Steele rejected similar conclusory asserts as insufficient to support an award of damages on default:

> In support of its Motion for Default Judgment, plaintiff offers the Declaration of Tara Love, who is a "Lawsuit Coordinator" for PNCEF. Love explains the Stipulated Loss Value calculation as follows: "Pursuant to the express terms of the Lease, Defendants owe PNC $22,584.74 in delinquent payments, $2,634.66 in late fees, $56,456.85 in future payments which are accelerated pursuant to the express terms of the Lease, and $45,000.00 as the future market value for the Equipment, for a total amount due and owing to PNC from Defendants under the Lease of $126,674.25."
>
> The problem is that the record is devoid of evidence of how any of these figures were calculated, but is instead confined to the conclusory Love Declaration listing those amounts in summary fashion. Presumably, it would be a simple matter for plaintiff to produce a ledger or other backup documentation showing the due dates and amounts of the delinquent payments, and to provide testimony in declaration form explaining how the late fees and future payment amounts were computed and demonstrating the factual and contractual basis for

each. But plaintiff has not done so, instead asking the Court to accept on faith that the bare, unadorned payment and late fee numbers presented in the Love Declaration are accurate. What's more, plaintiff submits a fair market value estimate of $45,000 for the equipment, without a trace of evidence of the factual underpinnings of this figure. Given the current state of the record, the Court has no idea where this $45,000 valuation originated and would be adopting it in a blind act of guesswork and speculation. This sort of judicial leap of faith in fixing the amount of a default judgment is fundamentally incompatible with the bright-line requirement that a plaintiff seeking a default judgment must prove its damages by record evidence. **Rather than merely *telling* the Court in summary fashion what its damages are, a plaintiff seeking default judgment must *show* the Court what those damages are, how they are calculated, and where they come from**, by reference to the lease agreement, appropriate back-up documentation, and witness testimony as appropriate. This was not done here.

Nor does the record, as presently formulated, provide a reasonable evidentiary basis for computing the attorney's fee component of any damages award. Again, the lease agreement obligated Hendricks Building "to pay all of Lessor's costs of enforcing Lessor's rights against Lessee ... including reasonable attorney's fees." But the record is devoid of evidence of the reasonable attorney's fees that PNCEF has actually incurred in enforcing its rights in this action. Rather than presenting such evidence, plaintiff submits the declaration of its counsel of record, who avers, "I believe that a fee of 15% of the fund to be collected, or $19,001.14, is reasonable" in this case. But this evidence answers the wrong question. The Court's task is not to ascertain what a hypothetically reasonable attorney's fee might be and to award that amount to plaintiff, but is instead to determine PNCEF's *actual* attorney's fee incurred in enforcing its rights against Hendricks Building in this matter, and to ascertain whether that actual figure (not a hypothetical fee untethered to PNCEF's actual financial commitment) is a "reasonable attorney's fee" within the ambit of Paragraph 14 of the lease agreement. On this record, the Court cannot ascertain what PNCEF's actual legal costs have been, much less make any judgment as to their reasonableness.

*PNCEF*, 740 F. Supp. 2d at 1293-94 (boldface emphasis added) (record citations omitted).[8]

---

[8] Chief Judge Steele expressly noted that he had "designated [*PNCEF*] for publication

However, Roberts has also averred that, "[o]n November 30, 2013, Anand Patel signed Wage and Hour Form WH-56 agreed to pay the [stated] back wages and an equal amount in liquidated damages; a total of $5,696.74" but "has not complied with this agreement."  (Doc. 14-1 at 3).  Patel is also averred to be the "owner" of GCMC.  (*Id.* at 2).  Given that the Defendants have previously been made aware of the amount of damages sought by the Secretary and (at least initially) agreed to it, the Court will accept as competent and sufficient evidence the back wages assessment set forth in Roberts's affidavit and accompanying appendix (Docs. 14-1 & 14-2).  The Court incorporates by reference the information contained in the appendix (Doc. 14-2), and the Clerk of Court is **DIRECTED** to attach a copy of the appendix (Doc. 14-2) to this Order upon docketing.

As such, pursuant to § 216(c), the Court will award the Secretary $2,848.37 in "unpaid minimum wages" and "overtime compensation," plus "an equal amount as liquidated damages[,]" for a total monetary damages award of **$5,696.74**.

### E.    Injunctive Relief

The Secretary's Complaint also seeks injunctive relief under 29 U.S.C. § 217. "Section 17 of the FLSA, 29 U.S.C. § 217, authorizes the district courts to issue both prospective and restitutionary injunctions."  *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 196 (5th Cir. 1983) (citing *Donovan v. Brown Equipment and Service Tools, Inc.*, 666 F.2d 148 (5th Cir. 1982)), *abrogated on other grounds as recognized*

---

because it addresses recurring issues concerning a plaintiff's burden and the quantum of proof needed for a default judgment…By designating th[e] Order for publication, [Chief Judge Steele] hope[d] that it w[ould] be instructive to other litigants of the applicable standards and requirements with which a movant seeking default judgment must comply." PNCEF, 740 F. Supp. 2d at 1288 n.1.

*in Reich v. Bay, Inc.*, 23 F.3d 110, 117 n.4 (5th Cir. 1994)).  "Generally speaking, the propriety of a grant of injunctive relief in a § 217 action is an equitable matter, committed in the first instance to the sound discretion of the district court."  *Id.* (citing *Shultz v. Parke*, 413 F.2d 1364 (5th Cir. 1969)).

> A restitutionary injunction under section 17 is intended to accomplish several purposes. First, and most obviously, it is intended to compensate the affected employees for the losses they sustained as a result of the wrongful withholding of their wages. *Hodgson v. American Can Co.*, 440 F.2d 916, 922 (8th Cir. 1971)…Moreover, the issuance of the injunction against withholding back pay is indispensable to its restitution in these cases, for once the Secretary has sought such an injunction, the employees' right to sue for wages due is terminated. Section 16(b), 29 U.S.C. 216(b) (Supp. III 1979). Therefore, if the court refuses to order the payment of back wages in the Secretary's suit, the employees "will have a legal right to that money without any means to enforce it." *Wirtz v. Malthor, Inc.*, 391 F.2d 1, 3 (9th Cir. 1968).
>
> The second major purpose is "to correct a continuing offense against the public interest." *See, e.g., Marshall v. A&M Consolidated Independent School District*, 605 F.2d 186, 189 (5th Cir. 1979)…Therefore, a district court, in deciding whether to grant a restitutionary injunction, may not focus only on the interests of the parties to the suit before it. Requiring the payment of back wages is meant both to "increase the effectiveness of the enforcement of the Act by depriving a violator of any gains accruing to him through his violation," *Marshall v. A&M Consolidated Independent School District, supra*, 605 F.2d at 189, quoting *Wirtz v. Malthor, Inc., supra*, 391 F.2d at 3, and to protect those employers who comply with the Act's wage requirements from having to compete unfavorably with those who fail to comply. Wirtz v. Jones,…340 F.2d [901,] 905[ (5th Cir. 1965).]
>
> This is not to suggest that section 17 restitutionary injunctions should issue as a matter of course upon a finding of past wages due. *Compare Wirtz v. Malthor, Inc., supra*, 391 F.2d at 3 (granting restitutionary injunction) *with Brennan v. Saghatelian*, 514 F.2d 619, 621-622 (9th Cir. 1975) (denying such an injunction). If, for example, the employer is bankrupt, an injunction would be vain and the employer should not be threatened with citation for contempt for not doing what he is unable to do.

> On the other hand, the trial judge's discretion should be exercised with an eye to the purposes of the Act. *See, e.g., Mitchell v. Ballenger Paving Co.*, 299 F.2d 297, 300-01 (5th Cir.), cert. denied, 370 U.S. 922, 82 S. Ct. 1565, 8 L. Ed. 2d 503 (1962).[] A section 17 injunction provides a remedy for violation of national labor policy in a single suit initiated by the Secretary on his own volition, thus avoiding potential multiplicity of employee actions on the one hand and, on the other, the complete abandonment of their just wages by employees apprehensive of employer retaliation. When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose. See *Shultz v. Parke, supra*, 413 F.2d at 1368-70 (5th Cir. 1969); *Wirtz v. B. B. Saxon Co.*, 365 F.2d 457, 462-63 (5th Cir. 1966). *Cf. United States v. Hayes International Corp.*, 415 F.2d 1038, 1044-45 (5th Cir. 1969) (Title VII).

*Brown Equip.*, 666 F.2d at 156-57.  *Accord Donovan v. Grantham*, 690 F.2d 453, 456-58 (5th Cir. 1982) (per curiam); *Sabine Irrigation*, 695 F.2d at 196-97.

The Secretary has not specifically requested a restitutionary injunction in his Complaint (*see* Doc. 1).  However, the Secretary's proposed default judgment order (Doc. 14-3), attached to the present motion, includes a provision that the Defendants be "restrained from withholding payment of back wages in the total amount of $2,848.37 and an additional equal amount as liquidated damages due employees…" (*id.* at 5).   Considering the above reasoning in *Brown Equipment*, and given that the Defendants have already reneged once after agreeing to pay damages, *see supra*, the Court finds that a restitutionary injunction as to the back wage award of $2,848.37 is appropriate.  However, the Secretary's request that the liquidated damages also be included in the injunction is inappropriate, as "[c]ourts are still not…authorized to require payment of liquidated damages in section 17 suits." *Brown Equip.*, 666 F.2d at 156.  *Accord Monahan v. Emerald Performance*

*Materials, LLC*, No. C08-1511 RBL, 2009 WL 1172703, at *4 (W.D. Wash. Apr. 22, 2009) ("Liquidated damages are unavailable as a remedy in a FLSA § 217 suit." (citing *Brown Equip.*, 666 F.2d at 156)).  Accordingly, the Court will, by separate document, enter an injunction stating as follows: "The Defendants are restrained from withholding from the Plaintiff Secretary of Labor payment of back wages in the total amount of $2,848.37 due their employees, as awarded in this action."  (*Cf.* Doc. 14-3 at 5).

As to prospective injunctive relief, the Secretary's Complaint requests that the Court "permanently enjoin[] Defendants, their officers, agents, servants, employees and all persons in active concert or participation with them from violating" §§ 206, 207, 211(c), 215(a)(2), and 215(a)(5).  (Doc. 1 at 4-5).  The "injunctive relief" section of the Secretary's proposed order attached to his motion for default judgment (Doc. 14-3 at 4-5) is equally general, requiring no more that the Defendants "shall not…fail to" obey §§ 206, 207, 211(c), 215(a)(2), and 215(a)(5).

"Fed. R. Civ. P. 65(d) requires that a[n]…injunction be 'specific in its terms'[9] and 'describe in reasonable detail ... the act or acts sought to be restrained.' "  *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehabilitative Servs.*, 225 F.3d 1208, 1222 (11th Cir. 2000).

> This Circuit has held repeatedly that "obey the law" injunctions are unenforceable. *See, e.g., Burton v. City of Belle Glade,* 178 F.3d 1175, 1200 (11th Cir.1999) (holding that injunction which prohibited municipality from discriminating on the basis of race in its annexation decisions "would do no more than instruct the City to 'obey the law,' " and therefore was invalid); *Payne v. Travenol Labs., Inc.,* 565 F.2d 895,

---

[9] The current version of Rule 65(d) requires that an injunction "state its terms specifically." Fed. R. Civ. P. 65(d)(1)(B).

899 (5th Cir. 1978) (invalidating injunction that prohibited defendant from violating Title VII in its employment decisions). The specificity requirement of Rule 65(d) is no mere technicality; "[the] command of specificity is a reflection of the seriousness of the consequences which may flow from a violation of an injunctive order." *Payne,* 565 F.2d at 897. An injunction must be framed so that those enjoined know exactly what conduct the court has prohibited and what steps they must take to conform their conduct to the law. *See Meyer v. Brown & Root Constr. Co.,* 661 F.2d 369, 373 (5th Cir. 1981) (citing *International Longshoremen's Assoc. v. Philadelphia Marine Trade Assoc.,* 389 U.S. 64, 76, 88 S. Ct. 201, 208, 19 L. Ed. 2d 236 (1967)).

*Id.* at 1222-23. *See also S.E.C. v. Sky Way Global, LLC*, 710 F. Supp. 2d 1274 (M.D. Fla. 2010) (thoroughly discussing why "obey the law" injunctions are).

However, the former Fifth Circuit, interpreting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949), took a more lenient view for FLSA injunctions, holding that such injunctions "may be sufficiently broad and general to enjoin any practices which would constitute violations of the Act's provisions dealing with minimum wages, overtime and the keeping of records. Decrees of such generality are often necessary to prevent further violations." *Wirtz v. Ocala Gas Co.*, 336 F.2d 236, 240 (5th Cir. 1964) (citing *McComb*, 336 U.S. at 191 (internal citation and footnote omitted).[10] In *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508 (5th Cir. 1969), the court upheld an FLSA injunction that closely tracked certain statutory language,[11] finding that

---

[10] *Ocala Gas* held that prior precedent "stand[ing] for a more restricted view[ of injunctions] must, with respect to the use of injunctions in Fair Labor Standards Act cases, yield to *McComb*…" 336 F.2d at 243 n.6 (citing *Nasif v. United States*, 165 F.2d 119 (5th Cir. 1947)).

[11]
        The injunction read[] as follows:

        'For reasons contained herein, it is ORDERED, ADJUDGED and DECREED

the injunction conformed to the requirements of F. R. Civ. P. 65(d). Rule 65(d) requires that an injunction have specificity so that those constrained to follow it will not want for guidance. The injunction in question is not lacking in clarity. Its interdiction of oppressive child labor is not vague, and its command that Gulf King keep and preserve records is clearly understandable. If for some reason Gulf King had doubts about the meaning of any part of the injunction, it could have sought district court clarification. *McComb v. Jacksonville Paper Co.*, 1949 , 336 U.S. 187, 69 S. Ct. 497, 93 L. Ed. 599.

The fact that the decree includes specific references to sections of the Fair Labor Standards Act is not, as here used, inconsistent with the requirements of Rule 65(d). It is significant that the injunction does not engraft the statute in gross, *Cf. Fleming v. Salem Box Co.*, D.C. Or. 1940, 38 F. Supp. 997, or rely on the statute for clarification of what is otherwise unclear in the decree itself. It merely supplements specific instructions in the decree with the statutory authority from which the right to issue such instructions derives. The statutory material is thus given as a parenthetical reference, not as a substantive command.

407 F.2d at 517 (footnotes omitted).  *See also S.E.C. v. Goble*, 682 F.3d 934, 952 n.11

(11th Cir. 2012) ("[I]n *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 517 (5th Cir.

1969), the former Fifth Circuit found that an injunction which required compliance

---

that defendant, Gulf King Shrimp Company, its agents, servants, employees and all persons acting or claiming to act in its behalf and interest, be, and the same are hereby permanently enjoined and restrained from violating the provisions of sections 15(a)(4) and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended, in any of the following manners:
I.
'Defendant shall not fail to make, keep and preserve records of its employees and of the wages, hours or other conditions and practices of employment maintained by it, as prescribed by the Regulations of the Administrator issued, and from time to time amended, pursuant to Section 11(c) of the Act and found in Title 29, Chapter v. Code of Federal Regulations, Part 516;
II.
'The defendant shall not, contrary to Sections 12 and 15(a)(4) of the Act, employ any oppressive child labor (as defined in Section 3(l) of the Act) in interstate commerce or in the production of goods for interstate commerce.'

*Gulf King Shrimp*, 407 F.2d at 517 n.10.

with the records requirements of the Fair Labor Standards Act satisfied Rule 65(d).").

Considering the lenience shown FLSA injunctions by *Ocala Gas* and *Gulf King Shrimp*, the Court finds that the Secretary's requested prospective injunctive relief does not run afoul of Rule 65(d)'s specificity requirements.

> Although the question of whether an injunction should issue to restrain an employer from future FLSA violations is initially addressed to the discretion of the trial court, the exercise of that discretion is not unbridled. *Wirtz v. Atlas Roofing Manufacturing Co.*, 5 Cir. 1967, 377 F.2d 112; *Goldberg v. Cockrell*, 5 Cir. 1962, 303 F.2d 811. Since the FLSA itself provides for no administrative sanctions, the only remedy of the Secretary where an employer refuses voluntary compliance with the Act is resort to the judiciary for injunctive relief, and it is "no less important for the judiciary to use its injunctive power to effectuate the national policy expressed by Congress than for the executive branch to police the Act". *Wirtz v. Graham Transfer and Storage Co.*, 5 Cir. 1963, 322 F.2d 650, 653.
>
> The effect of permanently enjoining from future violations of FLSA an employer found to have violated that Act in the past is to shift the "responsibility for compliance onto the employer's shoulders" and to lessen the responsibility of the Wage and Hour Division of investigating past violators to ascertain if they are in compliance with the provisions of the Act. *Goldberg v. Cockrell*, 5 Cir. 1962, 303 F.2d 811, 814. The issuance of a permanent injunction in FLSA cases does not subject an employer against whom its runs to a penalty or a hardship since it requires him to do "what the Act requires anyway to comply with the law." *Mitchell v. Pidcock*, 5 Cir. 1962, 299 F.2d 281, 287. Because an injunction has an administratively beneficial effect in enforcing the FLSA, this court has not hesitated to reverse district courts for refusing to enjoin future violations. *See Shultz v. Salinas*, 5 Cir. 1969, 416 F.2d 412; *Mitchell v. Pidcock, supra*; *Mitchell v. Jax Beer Distributors*, 5 Cir. 1961, 290 F.2d 24; *Mitchell v. Hausman*, 5 Cir. 1958, 261 F.2d 778. In other cases where the facts have warranted prospective injunctions we have granted such relief but limited its duration. *See, e. g., Wirtz v. Atlas Roofing Manufacturing Co., supra*.
>
> [T]he two factors properly to be considered in determining whether a permanent injunction should be granted are the previous conduct of

the employer and the dependability of his promises for future compliance. *Shultz v. Salinas, supra*; *Wirtz v. Atlas Roofing Manufacturing Co., supra*; *Mitchell v. Hausman, supra*...[C]urrent compliance with the requirements of FLSA is no bar to prospective injunctive relief, *see Hodgson v. Ricky Fashions, Inc.*, 5 Cir. 1970, 434 F.2d 1261, 1263; *Gulf King Shrimp Co. v. Wirtz*, 5 Cir. 1969, 407 F.2d 508, especially where compliance is achieved only by the direct scrutiny of enforcement authorities. *Opelika Royal Crown Bottling Co. v. Goldberg*, 5 Cir. 1962, 299 F.2d 37, 44; *Mitchell v. Hausman, supra* at 780; *Mitchell v. Hodges*, 5 Cir. 1956, 238 F.2d 380, 381.

*Dunlop v. Davis*, 524 F.2d 1278, 1280-81 (5th Cir. 1975) (footnote omitted). *Accord Sabine Irrigation Co.*, 695 F.2d at 197 (""In deciding whether to issue a prospective injunction[ under the FLSA], the district court must evaluate the previous conduct of the employer and the dependability of his promises for future compliance.").

Considering these principals, the *Dunlop* court reversed the district court's denial of permanent injunctive relief, find, *inter alia*, that, even "assuming that [the employer] had ceased violating the Act after the initial investigation by the compliance officer, his attempts thereafter to avoid the payment of admittedly due back wages, his falsification of the receipts for those wages, and his misrepresentations to the Department do not demonstrate likelihood of future voluntary compliance on his part." *Id.* at 1281. The court "fail[ed] to find any indication in these circumstances, in light of [the employer's] proven practices and attitude, that violations will not be resumed in the future." *Id.*

As reported in the affidavit of investigator Roberts, *see supra*, the Defendants had previously signed a form indicating that they agreed pay the damages amount sought by the Secretary, but the Defendants have not kept this promise. This "previous conduct" weighs in favor of issuing a permanent injunction. Moreover,

given that the Defendants have utterly failed to defend their conduct in this action, the Court is bereft of <u>any</u> "promises for future compliance" to consider.  Thus, the Court finds it appropriate to grant the prospective injunctive relief the Secretary seeks and will issue, by separate document, an injunction stating as follows:

> Defendants Gulf Coast Management Company, LLC d/b/a Hampton Inn Saraland and Anand Patel, their officers, agents, servants, and employees, and other persons who are in active concert or participation with any of the foregoing
>
> - shall not, contrary to §§ 7 and 15(a)(2) of the Fair Labor Standards Act of 1938, 29 U.S.C §§ 207 and 215(a)(2), employ any employee in commerce or in the production of goods for commerce, or in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the Act, for more than 40 hours in a workweek unless such employee is compensated for such hours in excess of 40 at an overtime rate of at least one and one-half times the regular rate at which such employee is employed;
>
> - shall not, contrary to §§ 6 and 15(a)(2) of the Act, 29 U.S.C. §§ 206 and 215(a)(2), fail to pay employees employed in an enterprise engaged in commerce or in the production of goods for commerce, the applicable minimum hourly rate; and
>
> - shall not, contrary to §§ 11(c) and 15(a)(5) of the Act, 29 U.S.C. §§ 211(c) and 215(a)(5), fail to make, keep and preserve adequate and accurate employment records as prescribed by Regulation found at 29 C.F.R. § 516.

(*See* Doc. 14-3 at 5).[12]  Upon consideration, the Court will set this prospective injunctive relief to expire after one year from the date of the injunction's issuance.

---

[12] The Court declines the Secretary's invitation that he be enjoined to exercise his obligations under § 216(c) ("Any sums thus recovered by the Secretary of Labor on behalf of an employee pursuant to this subsection shall be held in a special deposit account and shall be paid, on order of the Secretary of Labor, directly to the employee or employees affected. Any such sums not paid to an employee because of inability to do so within a period of three years shall be covered into the Treasury of the United States as miscellaneous receipts."). (*See* Doc. 14-3 at 5).  The Court has no reason to believe that the Secretary will fail to do so

### III.   Conclusion

In accordance with the foregoing analysis, and under Federal Rule of Civil Procedure 55(b)(2), it is **ORDERED** that the Secretary's Motion for Default Judgment (Doc. 14) is **GRANTED** as follows:

- Pursuant to 29 U.S.C. § 216(c), the Secretary is awarded and shall recover from the Defendants, jointly and severally, a total of **$2,848.37**, representing back wages owed to the employees listed in appendix attached hereto for the periods set forth therein, and **an equal sum** as liquidated damages, for a total monetary award of **$5,696.74**.

- Pursuant to 29 U.S.C. § 217, the Court, by separate document, shall issue an injunction against the Defendants in conformance with Section II.E. of this Order.[13]

Final judgment in accordance with this Order and Federal Rule of Civil Procedure 58 shall issue separately.

The Clerk of Court is **DIRECTED** to serve copies of this Order, the injunction, and the final judgment on the Defendants by certified mail at the following addresses:

---

voluntarily.

[13] The Secretary has also requested that the Court include in this Order the provision that "court costs of this action hereby are taxed to Defendants for which execution may issue." (Doc. 14-3 at 6).  The Court declines to do so.  The Secretary may apply for an award of costs in accordance with Federal Rule of Civil Procedure 54(d)(1), SD ALA LR 54.1 (www.alsd.uscourts.gov/documents/forms/local-rules.pdf), and SD ALA Standing Order No. 13 (www.alsd.uscourts.gov/documents/forms/STDO13.pdf).

Gulf Coast Management Company, LLC
d/b/a Hampton Inn Saraland
c/o Ramon Patel
6401 Canebrake Rd.
Mobile, AL  36695

Gulf Coast Management Company, LLC
d/b/a Hampton Inn Saraland
1320 Industrial Parkway
Saraland, AL  36571

Anand Patel
1320 Industrial Parkway
Saraland, AL  36571

**DONE** and **ORDERED** this the 3rd day of March 2015.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**